## M. Thomas & Sons *versus* Maria G. Cummiskey, Administratrix.

A. delivered a number of books to B. & Co., auctioneers, for sale. C., though not a member of the firm of B. & Co., was their agent in charge of the book department of their business. Part of the books were sold and the remainder held for future disposition. At the instance of C. these books were left on the premises of B. & Co. A. offered to have them insured, but was deterred from this by the allegations of C. that B. & Co. carried sufficient insurance to cover all the goods in the establishment including these books. B. & Co. actually had at this time two policies aggregating $12,500, and which, by their terms, were on goods owned by B. & Co. and on those held by them in trust or on consignment. While A.'s books were thus in B. & Co.'s store, the same was destroyed by fire, with all its contents; and as the loss was in excess of $12,500, this entire sum was paid them by the companies. After the fire B. & Co. offered A. $199. They denied legal liability to pay him any insurance, but claimed that they were willing to apportion it and give him this sum. A. refused their offer and brought suit for the value of the books. *Held,*

(1) That the policies of insurance covered A.'s books, and when B. & Co. received the $12,500 they held it in trust and were bound to account for its distribution. A. was not obliged to show that after paying all other claims there was enough left to cover his books; but it was B. & Co.'s duty to show, in detail, the application of the fund. Upon their neglect to do this, they were properly held accountable to A. for the full amount of his loss.

(2) That evidence of the conversation between A. and C. in reference to the insurance carried by the firm, was admissible to prove, how, and under what conditions the books were left with the firm. C.'s declarations, in this regard, were within his authority, as manager of the book department of B. & Co.'s business, and were binding upon the firm.

There was also testimony offered to the effect that after the fire, B. & Co. requested A. to present his account of loss.

*Held,* That this was admissible as some evidence of the ratification of the agreement made by C. to insure the books.

*Held,* That although, under the evidence, there may have been no express contract of indemnity, yet there was its equivalent in the form of an implied contract. A. was not only assured that the books were covered by the insurance, but as a fact they were actually covered by the terms of the policies, and B. & Co. were bound to make good A.'s loss.

January 16th, 1885. Before MERCUR, C. J., GORDON, PAX-

[Thomas & Sons v. Cummiskey.]

son, Trunkey and Green, JJ. Sterrett and Clark, JJ., absent.

Error to the Court of Common Pleas, No. 3, of *Philadelphia county :* Of January Term, 1884, No. 312.

Case, by Maria G. Cummiskey, administratrix of Eugene Cummiskey, deceased, against Thomas S. Ellis and Napoleon A. Jennings, lately trading as M. Thomas & Sons, to recover the value of certain books destroyed by fire while in the custody of the defendants as auctioneers.

On the trial, the following facts appeared: In February, 1882, Dr. James Cummiskey, as agent for the plaintiff, delivered certain books to the defendants for sale at auction. Part of them were sold on February 28th and March 1st, 1882, and the remainder held for future disposition. Those remaining unsold were left in the store at the instance of S. S. Ellis, who was not a member of the firm, but had general charge of the book department; and who, when Dr. Cummiskey spoke of having the books insured, told him that the defendants carried sufficient insurance to cover all the goods in the establishment, including these books.

On July 1st, 1882, defendants' store was destroyed by fire with its contents, including plaintiff's books. After the fire, it transpired that the defendants had $12,500 insurance on both the goods owned by them and those held by them in trust and on consignment. The loss being in excess of this amount, the entire sum of $12,500 was paid to the defendants by the insurance companies.

Some time afterwards, Dr. Cummiskey received a communication from the defendants, offering him $199, and on application to them to know what it meant he was referred to Mr. Keele, an employé, who informed him that as the insurance was not enough to cover all claims, they would apportion it, and give him $199. This offer Dr. Cummiskey refused; and his principal, Maria G. Cummiskey, administratrix, brought suit for the value of the books destroyed.

Plaintiff offered Dr. Cummiskey's testimony of his conversation with S. S. Ellis in regard to leaving the books in the store. Objected to by defendants on the ground that the plaintiff had not shown that Ellis was authorized to bind the firm. Objection overruled and evidence admitted, as follows: " I then went to see Mr. S. S. Ellis. Mr. S. S. Ellis was the one who settled the account sales with me. Not member of firm. Did not suppose him member of firm. He seemed to have general charge. I saw Mr. S. S. Ellis and I told ——.

I saw Mr. S. S. Ellis, and asked him what he would charge for storage for the goods, and he replied nothing. I then asked him what about insuring them, as I had thought of in-

suring them.  He replied what is the use of doing that, we carry a line of $50,000 on our stock, but if you do not think it is sufficient you can insure them.  I told him I thought that was ample, and left feeling secure."  (First assignment of error.)

Plaintiff also offered Dr. Cummiskey's evidence of his conversation with Ellis after the fire; which was objected to for the same reason.  Objection overruled and evidence admitted as follows: "Shortly after the fire I saw Mr. S. S. Ellis and he said ——.  I saw S. S. Ellis about the fire and he said I had better send on my account of books destroyed, and he would have the matter settled.  I asked him what price would be put in.  I did not get a satisfactory reply.  I made out the account."  (Second assignment of error.)

Stan. V. Henkels, also employed by the defendants in the book department, was called by plaintiff in regard to an interview between Dr. Cummiskey and S. S. Ellis.  Objection by defendants on same ground.  Objection overruled and evidence admitted, as follows:

"Dr. Cummiskey saw Mr. Ellis in my presence and told him he would like to place an insurance on his books.  Mr. S. S. Ellis said it was not necessary, for we carry $50,000 insurance, which is sufficient to cover all goods in the place; that is all I remember of the conversation.  Dr. Cummiskey said that would be sufficient, and that he would leave the books there. He did leave them and they were burned up July 1st, 1882." (Third assignment of error.)

The defendants submitted the following points:

"1. If the jury believe that Samuel S. Ellis said to Dr. Cummiskey, when the latter said he thought of insuring: ʻWhat's the use of that?  We carry a line of $50,000 on our stock; if you don't think that's sufficient you can insure,ʼ this did not amount to an agreement on the part of the firm to indemnify the plaintiff for loss of goods by fire."

*Answer.*—"Affirmed.  This alone does not amount to an agreement."  (Eighteenth assignment of error.)

"2. That if the plaintiff, in suing for indemnity, on account of the loss by fire, relies only on what was said by Samuel S. Ellis, according to Dr. Cummiskey's testimony, and that of Mr. Henkels, no agreement of the firm to indemnify the plaintiff has been shown."

ʻ. *Answer.*—"Affirmed.  If that only was in the case."  (Nineteenth assignment of error.)

"3. That it is not disputed that Samuel S. Ellis was not a member of the firm.  He was merely a clerk, and there has been shown no authority in him to bind the firm by any agreement to indemnify the plaintiff."

*Answer.*—Refused. (Twentieth assignment of error.)

"4. That if the jury believe that Samuel S. Ellis was empowered, as the clerk in charge of the book department, to superintend sales, make out accounts and pay sales, and that these were all his duties, then his authority was not adequate to the making of an agreement to indemnify the plaintiff set up in this case."

*Answer.*—"Affirmed. If these were all his duties, he had not sufficient authority to make an agreement to indemnify the plaintiff." (Twenty-first assignment of error.)

"5. That there has been shown no express contract by the defendants to indemnify the plaintiff on account of the loss of the goods by fire."

*Answer.*—Refused. (Twenty-second assignment of error).

"8. That the goods of the plaintiff are not shown to have been covered by the two policies of insurance in evidence."

*Answer.*—Refused. (Twenty-third assignment of error.)

In the general charge the court instructed the jury, inter alia, as follows: "Where the business is of a public nature, where it is such as to invite the entire community into communication then there is perhaps not so much evidence required to satisfy you of the authority of an agent to act, as there is where a man in his private and individual transactions is operating with a private individual, or where a person professing to be an agent is acting for one private individual with another. This business in which the defendants, as you have heard, have been engaged for fifty years, is that of auctioneers —that is, the business of selling goods to the public by public outcry and vendue." (Fourth assignment of error.)

"Not so much evidence of authority would be required in the case of a general employment, such as that of the defendants, as would be needed in the case of a private transaction between a private person and another. As a matter of course, it cannot be expected, where there is an extensive business like this, probably the largest of the kind in the United States, embracing every kind of goods that are sold at second hand, books, pianos, etc., and every conceivable thing, that in every transaction with their customers, those who deal with them, those who consign goods to them, and those who buy goods, the head of the firm or the members of the firm can see to and attend to all the details of the business. Therefore it is necessary, as they have shown by their own testimony, not only to have agents, but to have departments; that is, a department for one subject and a department for another. As far as this case is concerned, there was a department for the sale of books. It is in evidence that Mr. Ellis was head of that department, and that as such he had the exclusive custody and control of the books." (Fifth assignment of error.)

[Thomas & Sons *v.* Cummiskey.]

" In other words, that department, as you have learned from the testimony, was to a certain extent independent of all other departments. As head of that department Mr. Ellis had authority to say anything touching the safe custody and sale of books and the insurance of those who dealt with him in books against loss or damage by fire." (Sixth assignment of error.)

" I have said what it was the duty of Dr. Cummiskey to do. He had also a right to ask the agent of the defendant, Mr. Ellis, who had charge of his property, or the property for which he was agent, any questions touching the protection and safety of the books and touching their insurance against loss by fire." (Seventh assignment of error.)

" The policies of insurance show that the firm had an insurance which covered these particular books together with goods of their own, and those of other customers, or other persons, who made consignments to them or gave them goods to take care of or sell for them." (Eighth assignment of error.)

." If the information that was sought on that occasion by Dr. Cummiskey and communicated by Mr. Ellis was calculated to advance or increase the business of the defendants and induce the public to leave goods there, it was the duty of Mr. Ellis to make known the information." (Ninth assignment of error..)

" If the defendants, after the fire, requested or invited Dr. Cummiskey to present an account, it is evidence that the defendants made the agreement to insure through Ellis, or that they ratified the arrangement already made." (Tenth assignment of error.)

" And, of course, if the jury believe that they acquiesced in Ellis' statement it is just as strong as if they had given him written power and authority when they appointed him head of that department to make such a statement to customers or dealers with the firm." (Eleventh assignment of error.)

" There is, however, another matter which the jury and the court are compelled to consider in this case, that is, if the jury are against the plaintiff upon all the questions that I have suggested as to the authority of Mr. Ellis, and other matters pertaining thereto, there is this most important point. There is evidence, the evidence of two policies of insurance, which shows that the defendants received a certain amount of money from the insurance companies. The policies show for exactly what purposes they received that money. In substance, it was for goods which they themselves owned, for goods which they held in trust and for goods which they held from their customers. It is not contested, I think, by the defendants, that the

goods in question were consigned by Dr. Cummiskey to them, and that they were held in trust by them. The defendants, therefore, must account to the plaintiff for this money. The defendants must show that she is not entitled to receive all of this." (Twelfth assignment of error.)

"As this money was many times larger than the plaintiff's claim the defendants must show that she was not entitled to receive all of the money, or at most only a portion of it. It is in evidence that they tendered either as an offer of compromise or as a gratuity, $199. Have they shown what was done with the rest? Have they shown that the plaintiff was not entitled to receive more? Have they shown that any one else was interested in the money which they received from the insurance company? It is not enough for the defendants to say that that was plaintiff's share of what was left. They must show how they used the money; what was paid to themselves; what goods others had. They must show how much in value of goods they held in that establishment. They must show in detail how much in value of other people's goods they had in addition to those of Dr. Cummiskey. They were trustees of that fund whatever it amounted to. They were trustees under the terms of the policy of insurance for themselves, for goods they held in trust, and for goods they held on consignment from the plaintiff. It was their duty to account for the money; to show a detailed statement of how it was distributed if they would desire or did desire to pay the plaintiff a less amount than his claim." (Thirteenth assignment of error.)

"Have they done anything of this kind? Have they shown how much goods they had there or how much they lost? Have they shown how much goods of their customers to whom they have said they paid a portion of the money which they received, they had there. Until they have done that, gentlemen of the jury, there are no data from which a jury can infer that they paid anything. It is not, as I have already said, enough for them to say that we paid ourselves first, and we distributed what was in excess of our claim as a gratuity. They could not have obtained the money from the insurance companies if these goods were not covered without a fraud upon the insurance companies; because if the interpretation which their counsel has put upon these insurance policies was that no goods were covered by it except their own, it would have been a fraud on the insurance company for them to have received one cent above the amount of their insurance." (Fourteenth assignment of error.)

"No one, perhaps, in the course of the trial, has ever described the defendants as anything but honorable and fair dealing men. Therefore you may take the defendants' integ-

rity as an answer to the argument of their counsel on these policies." (Fifteenth assignment of error.)

" Have they shown how they appropriated this money? It was their duty to do that. Whenever a man holds money or property in trust, it is not enough for him to say, I paid this out to a party that had a right to it. You or I, or any other man, who has the slightest interest in a fund of that character, a trust fund, have a right to receive a fair and proper account of the manner in which money of that kind has been distributed, and that more especially, gentlemen, when they ask to decrease your money or to pay you a less amount than you had thought you had a right under all the facts of the case to demand from them." (Sixteenth assignment of error.)

" In a case of this kind it is not an easy matter, no matter what theory you adopt, to give exact justice between the parties. It must in any event be a sort of guess or a sort of calculation from the testimony, because the evidence upon which you are to base your verdict is of an uncertain kind and character." (Seventeenth assignment of error.)

Verdict for plaintiff for $574.35 and judgment thereon: whereupon the defendants took this writ assigning for error, the admission of evidence, as above set out; the answers to their points and the parts of the general charge cited.

*Albert E. Peterson* and *William W. Wiltbank*, for plaintiffs in error.

*Charles Wetherill* (with whom was *Charles Hart*), for defendant in error.

Mr. Justice GORDON delivered the opinion of the court, March 9th, 1885.

The history of this case is neither complex nor lengthy. Sometime about the middle of February, 1882, Dr. James Cummiskey, acting as agent for the plaintiff, delivered a number of books to the defendants, who were auctioneers, for sale. At the head of the book and furniture department of the firm, was their agent, Samuel S. Ellis, who had a general charge of these divisions of the defendants' business, which seems to have been very large and varied. Part of these books were put up and sold, and the remainder were held over for future disposition. At the instance of Ellis these books were left in store on the premises. Cummiskey spoke about having them insured, but from this he was deterred by the allegation of Ellis that the firm carried insurance sufficient to cover all the goods in the establishment including these. In immediate connection with these facts, is to be taken the fur-

ther evidence that the defendants had at this time two poli-
cies on the goods in their premises, one from the American
Fire Insurance Company for $5,000, and another in the Penn-
sylvania amounting to $7,500. These covered goods, not only
on account of the assured, but also such as they held in trust
or on consignment. On the 1st of July, 1882, the establish-
ment, with all its contents, was burned, including, of course,
the goods of the plaintiff. As the loss was, as it seems, in
excess of the policies, the full amount of the insurance,
$12,500, was paid by the companies to the defendants. Some
time after the date of the fire, Cummiskey received a commu-
nication from the defendants offering him $199, and on appli-
cation to them to know what it meant, he was referred to Mr.
Keele, who informed him that they would apportion the insur-
ance and give him $199. As this offer was not satisfactory it
was not accepted. Now, in order to avoid prolixity in the
discussion of this case, we may say, *in limine*, that the policies
above mentioned covered the plaintiff's goods : Siter *v.* Morrs,
1 Har., 218. When the defendants received the $12,500,
insurance money, a sum far more than necessary to cover the
value of the plaintiff's goods, they held it as trustees and were
bound to account for its disposition. It was not the business
of the cestui que trust to show that after paying all other
claimants there was enough left to cover her goods; on the
other hand, it was the duty of the trustees to show how the
money which came into their hands was, or ought to be, applied.
They chose not to do so, hence, they were properly held to
account to the plaintiff for the full amount of her loss. What
has been said answers the 12th, 13th, 14th, 15th, 16th and 23d
assignments of error. In this connection the evidence of
Cummiskey and Henkels, detailing the conversation with Ellis,
and his declaration concerning the amount of insurance car-
ried by his firm, was admissible as proving the conditions
under which the goods were left in store with the defendants.
Ellis had charge of one or two of the departments of a large
business establishment which could not be properly conducted
except by such an agent, and he was the one whom the
public was expected to consult with reference to the affairs
pertaining to his departments. That this is so with reference
to corporations has been ruled by this court in the cases of
Tanner *v.* The Oil Creek Railroad Company, 3 P. F. S., 411,
and Adams Express Co. *v.* Schlessinger, 25 Id., 246, and we
can see no good reason why it should not also apply to part-
nerships doing so large a business as to render departmental
agencies necessary. So we find in Wharton's Law of Con-
tracts, sec. 269, the statement, that declarations of an agent,
though not specifically authorized by the principal, and even

though made contrary to his directions, will nevertheless bind him if made within the apparent range of the authority with which the agent was intrusted.   It follows that the evidence objected to on part of defendants was admissible to prove, at least, how, and under what conditions the books were stored. That came within the range of Ellis's business, and he was certainly not acting outside of that range when he informed customers of the means used by his principals for the safe storage of goods.   As the case thus presents itself to us we must refuse to sustain the 1st, 2d and 3d assignments of error, and also the 4th, 5th, 6th, 7th, 8th and 9th.   So we agree with the learned Judge of the court below, that if after the fire the defendants requested Dr. Cummiskey to present his account, it was some evidence of the ratification of the agreement made by Ellis to insure the safety of the goods, and that if there was such an after ratification of the acts of Ellis, it was just as effective as a previously executed power:  McCullough *v.* McKee, 4 Har., 289.   We, therefore, refuse to sustain the 10th and 11th assignments, and as the 18th, 19th, 20th and 21st embrace exceptions to points of the defendants which were substantially affirmed, we must also dismiss them.   The remaining assignment needs no special answer, for whilst it may be admitted that there was no express contract of indemnity between the parties contestant, yet there was an equivalent in the form of an implied contract.   Not only was Cummiskey assured that the books were covered by the insurance effected by the defendants, but such was, in fact, the case; they were covered by the policies already mentioned.   Therefore, whether there was an express contract or only an implied one, was of no kind of consequence, as in either case the defendants were bound to make good the plaintiff's loss.

The judgment is affirmed.