## Johnson v. Stewart, Appellant.

*Insurance—Fire insurance—Policy—Construction—Bailment—Grain elevator—Loss by fire—Rights of strangers to insurance policy—Evidence—Parol evidence rule.*

1. Where the bailor of property claims under a fire insurance policy effected by one not the owner of the goods, it must appear that the party effecting the insurance intended when taking out the policy to cover the bailor's interest and this intention must be ascertained not by parol evidence, but by the terms of the contract contained in the policy.

2. An insurance policy issued to a grain warehouseman securing the insured against loss by fire "on merchandise of every description incidental to the business of the assured consisting chiefly of grain, grain products, etc.......their own or held by them in trust or on commission or consignment or sold but not removed, all while contained in the iron-clad building occupied as elevator," will, as between the parties to the contract of insurance, cover malt not in the warehouse at the time and subsequently shipped thereto, and as between the parties to the contract, extrinsic evidence is inadmissible to contradict or vary its terms.

3. Where a third person not a party to an instrument claims rights or benefits thereunder and seeks to take advantage thereof in an action against one of the parties to the contract, the parol evidence rule applies and neither of the parties to the action is entitled to introduce evidence to vary or contradict the writing.

4. The bailor of goods in a warehouse destroyed by fire may lawfully adopt the benefit of the insurance previously effected by the warehouseman, if he notify the latter before proof of loss is made.

5. Where in a suit in equity for discovery and for an accounting, it appeared that defendant firm, who were warehousemen, had taken out policies of insurance upon the warehouse and upon grain and grain products then stored and to be stored therein; that plaintiff had stored certain malt in such warehouse without notifying defendants that they were the owners thereof; that the warehouse and the malt were partially destroyed by fire; that plaintiffs requested defendants to include their malt in the proof of loss submitted to the insurance companies, which defendants refused to do; that defendants settled with the insurance companies but refused to account to plaintiffs for any of the money received; defendants are properly required to account to plaintiff for his proportionate share of the proceeds of insurance computed upon the basis of the settlement with the insurance companies and a decree for plaintiff in such case will be affirmed.

Argued Nov. 3, 1913. Appeal, No. 243, Oct. T., 1913, by defendant, from decree of C. P. Allegheny Co., July T., 1912, No. 1233, In Equity, for plaintiff on bill 'in Equity for discovery and for an accounting in case of Willis S. Johnson, trading as Joseph S. Finch and Company v: David G. Stewart and J. A. A. Geidel, Copartners trading as D. G. Stewart and Geidel. Before FELL, C. J., BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Bill in equity for discovery and for an accounting. On final hearing, SWEARINGEN, J., filed the following opinion:

This bill was filed to compel an accounting by the defendants for the proceeds of insurance collected by them for a fire in their elevator, in which a quantity of malt belonging to the complainant was destroyed. He was not named as a party in the contract of insurance, but he claimed that he was intended to be protected thereby.

From the evidence, we find the following:

### FINDINGS OF FACT.

1. David G. Stewart and J. A. A. Geidel, the defendants, are and were, at the times the matters and things

occurred, of which complaint is herein made,......co-
partners, trading under the firm name of D. G. Stewart
and Geidel, and engaged in the business of receivers and
shippers of grain, mill feed and hay, in connection with
which business they were the owners and operators of a
grain elevator, situated on West Carson street, in the
City of Pittsburgh, and known as the "Iron City Eleva-
tor," where they customarily held on storage grain and
other merchandise, as bailee and in trust for various
owners.

2. October 18, 1911, the complainant purchased from
George Bullen and Company, of Chicago, Ill., a carload
of malt, and ordered the same consigned and shipped to
said Iron City Elevator, Pittsburgh, Pennsylvania. The
car was delivered by the Pittsburgh, Cincinnati and St.
Louis Railroad to the defendants, at the Iron City Ele-
vator, on October 25, 1911. Said malt remained in said
elevator until November 8, 1911. At the time of said
delivery of the malt, the defendants did not know that
the complainant was the owner thereof, and they never
were informed that he claimed to be the owner until
November 14, 1911. The defendants did know that the
malt did not belong to them.

3. On November 8, 1911, the said Iron City Elevator,
together with its contents, and including the said malt
which belonged to the complainant, was destroyed by
fire. Immediately before the fire, the complainant's
malt was of the reasonable market value of $1.29 per
bushel, or of a total value of $1,560.90.

4. At the time of said fire, there were outstanding and
in force, in favor of the defendants, policies of insurance,
in the total sum of at least $24,000, issued by various
companies in various amounts. Each of said policies
contained the following clause, descriptive of the sub-
ject matter of the insurance:

"On merchandise of every description incidental to
the business of the assured, consisting chiefly of grain,
grain products, country produce, baled hay and straw,

sacks, bags and supplies, their own or held by them in trust or on commission or consignment or sold but not removed, all while contained in the iron-clad building occupied as elevator, situate on West Carson street, Nineteenth Ward, Pittsburgh, Pa. Other insurance permitted. Privilege to use natural gas and electricity and to operate at night."

5. November 14, 1911, prior to the expiration of the period for filing proofs of loss by the defendants, under the policies of insurance aforesaid, and prior to the adjustment of the loss, and before any amounts had been agreed upon or paid to the defendants by any of said insurance companies, the complainant addressed the following letter to the defendants:

"Gentlemen:

"We represent Joseph S. Finch and Company and Schomaker and Company, both of this city, who had certain property in the Iron City Elevator at the time it, together with its contents, was partially destroyed by fire on last Wednesday morning. The following is a description of the property so owned by our respective clients:

"Joseph S. Finch and Company, one car malt,
approximately valued at                        $1,500.00
"Schomaker and Company, one car rye in
sacks, approximately valued at                 $1,000.00

"We are informed that the policies of insurance covering the grain and other merchandise in the elevator at the time of fire were so worded as to cover said property, whether owned by you, or held by you in trust, or on commission or on consignment. The property of our clients above mentioned was, at the time and place aforesaid, held by you in trust or on consignment, and our clients are entitled to the protection of those policies, and hereby adopt the same, and claim the right to a proportionate part of the proceeds, measured by the amount and value of their property. We therefore beg to notify you to include such property in your proofs of

loss, and to hold the aforesaid proportionate part of the proceeds of the insurance in trust for and to the use of our clients.  If you neglect to do this and loss results to our clients, we shall hold you therefor.

"Yours very truly,
"Blakeley & Calvert,
"By Donald Thompson."

November 22, 1911, the following reply was sent by the defendants:

"Messrs. Blakeley & Calvert,
"Pittsburgh, Penna.
"Gentlemen:
"We acknowledge receipt of your favor of the 14th, relative to grain of Joseph S. Finch & Co. and Schomaker & Co., stored in the Iron City Elevator.  In reply will state that neither of these parties had any arrangements with us, whereby their grain was covered against loss by fire under cur policies.

"Very truly yours,
"D. G. Stewart & Geidel."

Prior to the aforesaid correspondence, a letter was delivered to the Pittsburgh agent of each of the insurance companies mentioned in Findings of Fact 4, of which the following is a copy of one of them:

"November 11, 1911.
"German-American Insurance Co. of Penna.,
"316 Fourth Ave.,
"City.
"Gentlemen:
"On behalf of Joseph S. Finch and Company and Schomaker and Company, we hereby notify you that our clients are the owners of the following property contained in the iron-clad building occupied as a grain elevator by D. G. Stewart and Geidel, situate on West Carson street in the City of Pittsburgh, Pennsylvania:
"Joseph S. Finch & Co., one car of malt, approximate value,                          $1,500.00

"Schomaker & Co., one car of rye in sacks,

approximate value, $1,000.00

"Being informed that it is the intention of the insurance companies interested to make sale of the undestroyed property on the premises aforesaid, we desire to notify you that you will sell or otherwise dispose of the malt and rye above mentioned, or the undestroyed portion thereof, at your peril and that if the same is disposed of that we shall look to you to reimburse our clients for the reasonable value thereof.

"We also take this opportunity to notify you that our clients claim the right to receive, and hereby make demand for, the proceeds of whatever insurance was placed on the property contained in the elevator by the owners thereof.

"Our clients stand ready to prove to your satisfaction their title to the property mentioned, at any time and place you may require.

"Yours very truly,

"BLAKELEY & CALVERT."

6. The defendants settled with all of said insurance companies, and the amount of said insurance has been paid. But the defendants did not claim payment from said insurance companies for the complainant's carload of malt, and the same was not considered in the adjustment of insurance which was finally made.

7. The defendants received and stored the complainant's carload of malt, in like manner as they received and stored other merchandise under similar circumstances, and there was no express contract between them, relative thereto. He did not notify the defendants that he was the owner thereof until after the loss occurred, nor did he at any time notify them to insure his property; neither did he effect any insurance thereon himself.

8. The defendants have refused to disclose to the complainant the exact amount or value of the grain and other merchandise contained in the Iron City Elevator

at the time of the fire, the exact amount of the insurance thereon, and the amount paid by the insurance companies to the defendants in adjustment of the loss.

When the defendants accepted and stored the complainant's malt, in the manner described in the Findings of Fact, an implied contract resulted, whereby they became his bailees, although they were not aware that he was the real owner. This malt was a "grain product" and was therefore merchandise "incidental to their business," which was that of conducting an elevator, "where they customarily held on storage grain and other merchandise, as bailee and in trust for various owners." Undoubtedly, the complainant's malt was merchandise of the kind that was to be covered by the clause in the policies, set out in Findings of Fact 4. The question then is whether or not such merchandise, received and stored as was the complainant's malt, was intended, at the time the aforesaid policies were issued, to be covered thereby. That intention must have existed at that time; otherwise a party situated as is the complainant cannot avail himself of the insurance: Steele v. Insurance Co., 17 Pa. 290.

It is clear that the defendants could have made a contract of insurance, whereby merchandise of an owner, which was subsequently received and stored, would be covered: Siter v. Morrs, 13 Pa. 218; Home Ins. Co. v. Balto. Warehouse Co., 93 U. S. 527.

"It was lawful for the plaintiff to insure in its own name goods held in trust by it, and it can recover for their entire value, holding the excess over its own interest in them for the benefit of those who have intrusted the goods to it": California Ins. Co. v. Union Express Co., 133 U. S. 387.

The bailor may lawfully adopt the benefit of the insurance, previously effected by the bailee, if he notify the latter before proof of loss is made: Johnston v. Abresch Co., 123 Wis. 130.

If, therefore, the defendants intended, when the poli-

cies of insurance were issued, that merchandise, subsequently received as was complainant's malt, should be covered thereby, he can avail himself thereof; and the question of intention is one of evidence. In this case, the defendants and the insurance companies have reduced their contract to writing. They have particularly described the merchandise, against the loss of which the insurance was effected, see Findings of Fact 3. This writing is in no wise ambiguous. Accordingly we ruled at the trial that parol testimony was not admissible to alter, explain or vary the written contract. We can perceive no reason for holding that ruling erroneous. In other words, the intention of the parties at the time the insurance was effected, must be ascertained from the writing itself.

The defendants were engaged in a quasi public business. A large part of it was to receive and store the grain, grain products, etc., of various owners, for compensation. Hence the complainant's malt, received and stored in the manner stated, was merchandise "incidental to the business" of the defendants. They were not the owners, but they held it as bailees for him, in the capacity of trustees. Thus their relation to the complainant was within the very letter of the policies—the malt was "held by them in trust" for him. In addition, this malt was consigned to the defendants, and they received and stored it as the consignees thereof. It was held by them "on consignment," a well-understood commercial expression, and one also used in these policies. Thus again the relation of the defendants to the complainant is brought within the letter of the contract. The intention, as disclosed by the language of this writing, is therefore plain. It needs neither interpretation nor construction, and the meaning of the words used is not contrary to the spirit of the contract. The obvious purpose was to cover a stock of merchandise which, from the nature of the defendant's business, was a shifting one. It was a stock which might be greater at one time

and less at another. The contract of insurance shows this. We cannot, therefore, sustain the contention of the defendants, that only those shippers were to be protected, who might make arrangements with them relative to insurance. No such distinction is made in the written instrument. To sustain that contention we would be obliged to resort to testimony contradictory of the writing. This we cannot do. It is not what the parties might have actually meant that must guide us. The inquiry is, what is the legal meaning of the language used in the writing? This is the rule which controls us in the construction of this contract.

We therefore conclude that the only meaning, which can be ascribed to the clause of the policies under consideration, is that a party situated as the complainant, was intended to be protected thereby. If we are correct in this conclusion, then the defendants owed the complainant the duty of including his property in their proofs of loss, or at least of giving him the opportunity of making his claim. Having refused to recognize his rights at all and having settled with the insurance companies without regard to him, the defendants, as his bailees, must account to him.

### CONCLUSIONS OF LAW.

From the foregoing, we reach the following conclusions of law:

1. The only contract which existed between the complainant and the defendants was that which is implied from the circumstances of the receipt and storage of said malt. They thereby became bailees of the malt for him, the true owner, even though they were not aware that he was the real owner.

2. The descriptive clause in the insurance policies, set out in Findings of Fact 4, embraced grain and grain products held by the defendants as bailees, and operated to extend the protection of the policies to the complainant's malt. The defendants had an insurable interest in

this malt and the policies were valid and enforceable by them against the insurance companies.

3. The complainant, by his written notice to the defendants after the fire, became entitled to his proportionate share of the proceeds of the policies mentioned in Findings of Fact 4; and the defendants, in adjusting their loss with the insurance companies without including and making claim for the complainant's malt, committed a breach of the contract, which makes them responsible to him for the amount which he ought to have received.

4. The complainant should have received from the proceeds of the said policies of insurance such proportion of the total amount, that would have been paid to the defendants had the complainant's malt and all other merchandise in like situation been included in the adjustment, as the value of complainant's malt, at the time of the fire, bore to the value of all other merchandise covered by the insurance. In arriving at the total value of the merchandise covered by the insurance, there should be taken into consideration, in addition to the merchandise which was included in the proofs of loss and considered in the adjustment, only such other merchandise as was in like situation with the complainant's, that is, whose owners adopted the benefit of the insurance and claimed their share thereof.

5. The defendants should discover and disclose to the complainant:

(1) The amount and value of the merchandise contained in the Iron City Elevator at the time of the fire, mentioned in Findings of Fact 3, and by whom and how the same was held or owned.

(2) The number and total amount of the policies of insurance covering such merchandise at the time of said fire.

(3) The amounts and values of the various lots of merchandise included in the proofs of loss and considered in the adjustment.

(4) The amounts paid or agreed to be paid to the defendants by the several insurance companies in adjustment and settlement of the loss.

6. The defendants should account to the complainant for his proportionate share of the proceeds of the insurance, computed upon the basis outlined in the Fourth Conclusion of Law.

The costs should be paid by the defendants.

The trial judge entered a decree in accordance with the prayers of the bill.

Exceptions to various findings of fact and law and the decree of the court were dismissed. Defendant appealed.

*Errors assigned* were in dismissing the exceptions.

*Thomas Patterson,* of *Patterson, Crawford, Miller & Arensberg,* with him *F. R. Stoner,* for appellants.—The defendants did not intend to insure interests subsequently arising at the time of the taking out of the insurance: Steele v. Insurance Co., 17 Pa. 290.

The policy does not include all of the merchandise in the warehouse and therefore proof must be had outside of the policy itself to show that the plaintiff's goods were intended to be insured at the time of the taking out of the policies: Richardson v. Home Insurance Co., 47 N. Y. Superior Ct. 138; Lee v. Adsit, 37 N. Y. 78; DeForest v. Fulton Fire Ins. Co., 1 Hall (N. Y.) 94 at 151; Catlett v. Pacific Ins. Co., 1 Wendell (N. Y.) 561; DeBolle v. Pa. Ins. Co., 4 Whart. 68; Reitenbach v. Johnson, 129 Mass. 316; Pittman v. Harris, 24 Tex. Civil Appeal Reports 503.

The terms of the written contract in this case are not conclusive of the meaning and intention of the parties to the policies of insurance in this proceeding: Hankinson v. Vantine, 152 N. Y. 30, at 31; Folinsbee v. Sawyer, 157 N. Y. 196; Krider v. Lafferty, 1 Wharton 303; Com. v. Contner, 21 Pa. 266; Selser Est., 141 Pa. 529; Galbraith

v. Bridges, 168 Pa. 325; Reynolds v. Mazner, 2 Iredell (Law) 30; Strader v. Lambeth, 47 Ky. (7 B. Monroe) 589; McMaster v. Ins. Co. of N. A., 55 N. Y. 222.

*Donald Thompson,* with him *Blakeley & Calvert,* for appellee.—The wording of the policy is unambiguous and necessarily includes plaintiff's property: Siter v. Morris, 13 Pa. 218; Thomas v. Cummiskey, 108 Pa. 354; Roberts v. Fireman's Insurance Co., 165 Pa. 55; Pittsburgh Storage Co. v. Insurance Co., 168 Pa. 522; Lumberman's Exchange v. Insurance Co., 183 Pa. 366; McDonald v. Williams, 18 Pa. D. R. 561; Home Insurance Co. v. Baltimore Warehouse Co., 93 U. S. 527; California Insurance Co. v. Union Compress Co., 133 U. S. 387; Johnson, et al., v. Campbell, 120 Mass. 449; Reitenbach v. Johnson, et al., 129 Mass. 316; Fish v. Seeberger, 154 Ill. 30; Firemen's Fund Insurance Co. v. Western Refrigerating Co., 55 Ill. Appeals 329; Boyd v. McKee, 99 Va. 72; Hough v. People's Fire Insurance Co., 36 Md. 398; Stillwell v. Staples, 19 N. Y. 401; Waring v. The Indemnity Fire Ins. Co., 45 N. Y. 606; Lowell Mfg. Co. v. Safeguard Fire Insurance Co., 88 N. Y. 591; Utica Canning Co. v. Home Insurance Co., 132 N. Y. Appellate Div. 420; Symmers v. Carroll, 134 N. Y. Supp. 170; Hagan v. Insurance Co., 186 U. S. 423; Johnston v. Abresch Company, 123 Wisconsin 130; Lucas v. Insurance Company, 23 West Virginia 258; Ferguson v. Pekin Plow Company, 141 Missouri 161; Bradley v. Brown, 78 Nebraska 836.

Extrinsic evidence was inadmissible for the purpose of showing that plaintiff's property was not included: Hough v. People's Fire Insurance Co., 36 Md. 398; Lucas v. Insurance Co., 23 West Va. 258; Wodock v. Robinson, 148 Pa. 503; Minneapolis, St. P. & S. S. M. Ry. Co. v. Home Insurance Co., 55 Minn. 236; Current v. Muir, 99 Min. 1; Johnston v. Abresch Co., 123 Wis. 130; Ferguson v. Pekin Plow Co., 141 Mo. 161; Lancaster Mills v. Merchants Cotton Press Co., 89 Tenn. 1,

With or without the application of the parol evidence rule the record contains nothing that would justify the court in setting aside the written policies: Zook v. Penna. R. R. Co., 206 Pa. 603; Miller v. Piatt, 33 Pa. Superior Ct. 547; Lancaster v. Flowers, 208 Pa. 199; Mulholland's Est., 224 Pa. 536; Pottsville Mutual Fire Insurance Company v. Minnequa Springs Improvement Company, 100 Pa. 137; Freedman v. Insurance Company, 182 Pa. 64; Clymer Opera Company v. Insurance Company, 50 Pa. Superior Ct. 645; Beatty v. Safe Deposit & Title Guaranty Co., 226 Pa. 430; Cochran v. Pew, 159 Pa. 184; Fry v. National Glass Co., 207 Pa. 505.

OPINION BY MR. JUSTICE MESTREZAT, January 5, 1914:

The elaborate opinion filed by the learned chancellor in the court below in which he finds the facts and discusses the law applicable to the facts fully vindicates his conclusion in sustaining the bill filed by the appellee. The decree may well be affirmed on his opinion.

We agree with the appellants that where a bailor of property claims under a fire policy effected by one not the owner of the goods it must appear that the party effecting the insurance intended when taking out the policy to cover the subsequent claimant's interest. This is a correct proposition, and we understand the appellee to concede it. But how shall such intention in the case in hand be ascertained? Certainly not, as contended by the appellants, by parol evidence, but by the terms of the contract contained in the policy issued by the insurance company to the appellants. It secures against loss by fire: "On merchandise of every description incidental to the business of the assured, consisting chiefly of grain, grain products, country produce, bailed hay and straw, bags and supplies, their own or held by them in trust or on commission or consignment or sold but not removed, all while contained in the iron-clad building occupied as elevator, situate on West Carson street, Nineteenth

Ward, Pittsburgh, Pa." The property of the plaintiff destroyed by the fire was a carload of malt consigned and shipped to the elevator in Pittsburgh owned and operated by the appellants who were engaged in the business of receivers and shippers of grain, mill feed and hay. There is no ambiguity in the language of the policy and it clearly covers appellee's property. As said by the learned chancellor: "This malt was a 'grain product' and was therefore merchandise 'incidental to their business,' which was that of conducting an elevator, 'where they customarily held on storage grain and other merchandise, as bailee and in trust for various owners.' Undoubtedly, the complainant's malt was merchandise of the kind that was to be covered by the clause in the policies." The authorities fully sustain this conclusion: Siter v. Morrs, 13 Pa. 218; Thomas v. Cummiskey, 108 Pa. 354; Roberts v. Firemen's Ins. Co., 165 Pa. 55; Pittsburgh Storage Co. v. Insurance Co., 168 Pa. 522; West Branch Lumberman's Exchange v. Insurance Co., 183 Pa. 366; California Ins. Co. v. Union Compress Co., 133 U. S. 387, and Home Ins. Co. v. Baltimore Warehouse Co., 93 U. S. 527. The latter case closely resembles the case at bar and is in line with the Pennsylvania cases, the language of the policy being: "their own, or held by them in trust or in which they have an interest or liability." Mr. Justice STRONG, delivering the opinion, said (p. 542): "There is nothing ambiguous in this description of the subject insured. It is as broad as possible. The subject was merchandise stored or contained in a warehouse. It was not merely an interest in that merchandise. The merchandise of the warehouse company, owned by them, was covered, if any they had. So was any merchandise in the warehouse in which they had an interest or liability. And so was any merchandise which they held in trust."

It is clear, we think, that the property of the plaintiff is within the language of the policy issued to the appellants, and, therefore, as between the parties to the con-

tract, extrinsic evidence is not admissible to contra-
dict or vary it.   Conceding this to be true, the appel-
lants contend that the rule applies only to the par-
ties to the contract and their privies and not to third
parties who seek to avail themselves of the contract or
to repudiate it, and that as a stranger to the contract is
not bound by its terms, a party to it contending with him
is likewise at liberty to attack it.   It, is, therefore,
claimed that as the plaintiff here was not a party to the
policy he is not bound by the rule excluding parol evi-
dence to contradict or vary it, and that the defendants
are, in this controversy with him, likewise relieved from
the application of the rule and are free to show that the
plaintiff's goods were not included in the policy of in-
surance.   It is true that the rule applies only between
parties to the contract and their privies, and that it has
no application to a stranger to the contract.   The latter
may, however, show that it was entered into for his bene-
fit, and, therefore, he has rights under the instrument.
He then claims through one of the parties and both he
and his adversary, a party to the contract, are excluded
from testifying.   The rule as to the rights of strangers
to the contract, to vary it by parol, must be limited to
rights independent of the instrument.   As to rights
which originate in the relation established by the instru-
ment the ordinary rule must apply:  Browne on Parol
Evidence, 28.   Where a third person not a party to an
instrument claims rights or benefits thereunder and
seeks to take advantage thereof, the parol evidence rule
applies to him as much as to a party, and he is not enti-
tled to introduce evidence to vary or contradict the
writing:  17 Cyc. 752.

We think the appellants fail to distinguish between a
third party who is claiming against or independent of
the provisions of the contract and therefore strictly a
stranger to it, and a person who is claiming under it
through one of the parties.   When this distinction is
observed, the authorities will be found to be in accord.

In our own case of Krider v. Lafferty, 1 Whart. 303, cited by appellants, this distinction is recognized, the court saying that the rule is "only applicable to cases of controversies between the parties to the agreements, their representatives, and those claiming under them, but not to strangers." In the case in hand the plaintiff claims through the assured, a party to the contract, and is seeking to enforce and not defeat the contract. Any rights he may have against the defendants in this action have accrued under their contract with the insurance company, and therefore the rule precludes both parties to this litigation from attacking it by parol evidence.

Decree affirmed.