## Murrell et ux. v. Moskow et ux.

*Raymond Pace Alexander*, for plaintiffs.

*Thomas W. Maher*, for defendants.

BOK, P. J., June 27, 1950.—Plaintiffs have a verdict for something over one third of their original claim.

There are few if any objections in the record, and the inadequacies of the charge now complained of were not called to the court's attention, although the customary invitation was offered. We regard the whole

charge as adequate and explicit in putting the basic issues before the jury. If the necessary interruption of three and a half days between the summations and the charge was prejudicial, it was most obviously so at the time and greater detail in the charge could have been requested.

The trial judge committed a factual error when he stated, after the charge, that he recalled no particular evidence of the value of the furniture destroyed in the fire: Hays, the insurance representative, gave the list of losses submitted by defendant, and this included furniture with assigned values. The verdict, however, is so much less than the claim that the jury may well have recalled this evidence and taken it into account; beyond this, the crucial factual issue was whether the property destroyed was plaintiffs' or defendants', and under plaintiffs' version, which must be accepted in view of the verdict, the furniture in the garage apartment amounted, with the possible exception of the bed, to very little. This error is of minor importance and does not touch the main stem of the case. And the verdict is such that the value of plaintiffs' property and the value of defendant's furniture are both covered by the settlement with the insurance carriers.

Plaintiffs were domestic servants hired by defendant, and were given the apartment over the garage, which was a building separate from the main house. When they were engaged, defendant urged them to bring their personal effects and assured them that he was covered by insurance that would also protect their belongings. A fire occurred and burned out the garage apartment, destroying whatever was there. Plaintiffs made out lists of their burned clothing and gave them to defendant. They testified that the closet in which they kept their clothes was completely empty and contained none of defendants' property. Defendant submitted a list to his insurance carriers and settled with

them for $2,206.21, plus $250 for smoke and water damage to the main house. His total claim was about $4,400; plaintiffs' was about $2,800. The court limited their recovery to the amount received by defendant in settlement, minus credit for the clothes and money that defendant and his wife bought them after the fire: with these credits plaintiffs' top recovery figure was $1,821.22, plus interest. The jury gave them $1,000, plus interest.

Defendant denied that he urged plaintiffs to bring their clothes to the apartment, and contended that the closet there, which he kept under lock and key, was filled with his things.

The case bristled with the most astonishing conflicts in testimony, and they concerned matters about which there could not reasonably be a mistake or even a failure of recollection. It was quite obvious that someone was deliberately lying. The jury solved that question and we see no reason to undo its work.

The crucial question for the jury was whose property was destroyed. Plaintiffs did not plead a general promise by defendant to pay for their lost property, as if he were their insurance company. They pleaded his duty to account to them out of the insurance as if for money had and received for their benefit as a result of the destruction of their property. Defendant pleaded the policies, letting them speak for themselves, and averred that the destroyed property was his and not plaintiffs'.

With the battle lines thus drawn, it is obvious that plaintiffs have not sued the insurance companies and must depend for recovery on the wording of the policies as to extension of risk to outbuildings and the property of servants. It is not impossible that the jury believed that defendant filed a proof of loss and listed all of the property destroyed as his, in order to obviate any question with the insurers over the status of the

servants' property, knowing that the lost property belonged to them, except for the furniture. If this be the fact, it lies between defendant and the insurance companies.

The policies cover plaintiffs' property. The Franklin policy, for $10,000, contains this:

"Insurance . . . shall cover on household and personal property usual and incidental to the occupancy of the premises as a dwelling . . . including household and personal property purchased under an installment plan and usual or incidental to a dwelling, belonging to the Insured or for which the Insured may be liable or, at the option of the Insured belonging to a member of the family of the Insured or to a servant thereof, while contained in the described dwelling or appurtenant private structures. . . ."

The following 10 percent provision refers to property in transit or traveling away from home.

Almost identical language appears in both of the London and Lancashire policies.

The Rhode Island policy covers "$7000. on household furniture".

Defendant argues that the policies were a personal contract between the insurers and defendant, that plaintiffs must prove that the insurance was for their benefit, and that it must be shown that defendant exercised the "option" mentioned in the policies to cover plaintiffs' property.

To give this argument its full effect would mean that defendant could pocket the entire insurance proceeds even if he lost nothing in the fire. This would be a flagrant case of unjust enrichment. Plaintiffs did prove that they moved their goods in at defendant's invitation and in reliance upon his assurance that they would be covered by his insurance. They gave him lists of their losses. We do not conceive it to be their duty to supervise his dealings with his insurers and see to

it that he announced to the companies the exercise of the "option". So far as the option goes, with respect to plaintiffs, defendant did exercise it by telling them they were covered.

Defendant cites McCracken v. McCracken, 24 D. & C. 367 (1935), but there both parties claimed the fund, which had been paid into court, and the question decided was that a remainderman who insures property without the life tenant's knowledge and pays the premiums is entitled to the fund. The case also decides that the defense of plaintiffs' having only a remainder interest can be raised only by the insurer and not by the life tenant.

The case of Spires et ux. v. Hanover Fire Insurance Company, 364 Pa. 52 (1950), suggested by defendant, involved a suit against an insurance company on quite different facts.

We think the case is governed by the principles set forth in the following authorities:

In Miltenberger v. Beacom, 9 Pa. 198 (1848), the court said:

"But, on the other hand, it is very clear one may insure, in his own name, the property of another for the benefit of the owner, without his previous authority or sanction; and it will enure to the party intended to be protected, upon his subsequent adoption of it, even after a loss has occurred. . . .

"A jury might, therefore, well be content with slighter proof *aliunde*, than would be satisfactory in other cases, to establish the conclusion that the defendant, from the beginning, regarded the sum insured, as representing the property in the tenements. But it is enough here, that they have acted upon some proof in finding his receipt of it a trust."

In Henry v. The First and Farmers National Bank and Trust Company, 18 D. & C. 548 (1932), the court quoted Mitchell, J., in Brand v. Williams, 29 Minn. 238, 13 N. W. 42:

" 'There need be no privity between the parties, or any promise to pay, other than that which results or is implied from one man's having another's money which he has no right conscientiously to retain. In such case the equitable principle upon which the action is founded implies the contract and the promise.' "

In Thomas & Sons v. Cummiskey, administratrix, 108 Pa. 354 (1885), the court said:

"It was not the business of the cestui que trusts to show that after paying all other claimants there was enough left to cover her goods; on the other hand, it was the duty of the trustees to show how the money which came into their hands was, or ought to be, applied. They chose not to do so, hence, they were properly held to account to the plaintiff for the full amount of her loss.

"Not only was Cummiskey assured that the books were covered by the insurance effected by the defendants, but such was, in fact, the case; they were covered by the policies already mentioned. Therefore, whether there was an express contract or only an implied one, was of no kind of consequence, as in either case the defendants were bound to make good the plaintiff's loss."

See also Johnson v. Stewart, 243 Pa. 485 (1914).

There is no point to the argument that the policies were issued before plaintiffs entered defendant's employ. The policies cover a class of persons, namely "servants", and in that kind of case it is not necessary to take out a new policy every time one employs a new servant, nor need the new servant insist upon it in order to recover.

The jury has found that at least $1,000 worth of the destroyed property belonged to plaintiffs. For all we know, the jury may have felt that the destroyed property included furniture and personal property of

both parties and taken a low view of its value both ways. We hold that under the circumstances established by the verdict, defendant must legally account to plaintiffs for the value of their lost property.

The motion for a new trial is denied.